STATE *vs.* FREDERICK W. NICHOLS.

PROVIDENCE—MARCH 29, 1905.

PRESENT: Douglas, C. J., Wilbur, Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Courts.   Jurisdiction.   Infamous Crimes.   Indictments.*

Cons. R. I. art. I, sec. 7, provides that "No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury, except in cases of impeachment or of such offences as are cognizable by a justice of the peace or in cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger."

Cons. R. I. art. X, sec. 7, provides that "the other towns (except New Shoreham and Jamestown) and the city of Providence may elect such number of justices of the peace as they may deem proper. The jurisdiction of said justices and wardens shall be regulated by law."

Gen. Laws cap. 114, § 1, as amended by Pub. Laws cap. 548, §§ 1 and 2, defining the offence of cruelty to animals, establishes the penalty to be imprisonment not exceeding eleven months or a fine not exceeding two hundred and fifty dollars or both, and in section 9 empowers the District Court to hold a defendant to answer a complaint without presentment or indictment by a grand jury, and to be exposed to the full penalty to be imposed by a District Court.

At the time of the adoption of the constitution, chapter 8 of "An act concerning crimes and punishments," 1838, provided in section 8 that "Every person who shall be sentenced under any provision in this act to imprisonment for life, or for the term of one year or more, for any offence, shall forever thereafter be incapable of being elected to any office of honor, trust or profit in this state and of acting as a freeman therein, and of giving testimony as a witness before any tribunal in this state, unless such sentence be reversed."

By section 10 all such persons were to be sentenced to the State prison, which provision still remains in force and carries with it a forfeiture of civil and property rights and the right to vote or hold office:—

*Held*, that the expression "infamous crimes," as used in the constitution, designates crimes which at any given time may be punished by imprisonment in the State prison for a term of one year or more, and that crimes or offences punishable otherwise are not "infamous crimes" within the purview of this section of the constitution.

*Held*, further, that there is no constitutional guaranty of indictment by a grand jury except as to such "infamous crimes," and that it is competent for the legislature to vest jurisdiction over all crimes and offences less than these in a District Court or other tribunal not attended by a grand jury, and to authorize prosecutions thereof by complaint.

*Held*, further, that the legislature may make lesser offences than "infamous crimes" indictable under the general powers contained in article X, sections 1 and 2, of the constitution which authorize the bestowal of jurisdiction upon courts inferior to the Supreme Court.

*Held*, further, that it is competent for the legislature to vest concurrent jurisdiction in the District Court, and in a court attended by a grand jury over any crimes or offences which are not punishable by death or by imprisonment in the State prison for one year or more.

CRIMINAL COMPLAINT. Heard on motion to quash, and denied.

BLODGETT, J. After having been tried and adjudged guilty by the District Court of the Fourth Judicial District upon a complaint charging cruel treatment of a horse, preferred under the provisions of section 1 of chapter 114, General Laws, as amended by section 1, chapter 548, Public Laws, the respondent before sentence has questioned the constitutionality of such conviction without previous indictment or presentment by a grand jury, and the constitutional question thus raised is now before the court under the provision of sections 1 and 2 of chapter 250, General Laws.

The question involved is stated in the respondent's motion to quash, as follows: "The statute on which said complaint and warrant are founded is unconstitutional and void in this, that said statute, Chapter 114 of the General Laws of the State of Rhode Island, in sections 1 and 2 thereof, defines the offense and establishes the penalty therefor to be imprisonment not exceeding eleven months, or a fine not exceeding Two Hundred and Fifty Dollars, or both, and in section 9 thereof em-

powers the District Court to hold the defendant to answer a complaint thereon without presentment or indictment by a grand jury, and to suffer and be exposed to the full penalty in said statute provided, to be imposed by said District Court; all of which is contrary to and in violation of Section 7 of Article 1 of the Constitution of Rhode Island, wherein it is provided that—

" 'No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury, except in cases of impeachment, or of such offenses as are cognizable by a justice of the peace or in cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger.' "

The general provision commonly found in the constitutions of the several States is thus stated by Chancellor Kent (2 Com. § 12): "The right of personal security is guarded by provisions which have been transcribed into the constitutions in this country from Magna Charta, and other fundamental acts of the English Parliament, and it is enforced by additional and more precise injunctions. The substance of the provision is, that no person, except on impeachment, and in cases arising in the military and naval service, shall be held to answer for a capital or otherwise infamous crime, or for any offence above the common-law degree of petit larceny, unless he shall have been previously charged on the presentment or indictment of a grand jury."

This view is confirmed by an examination of the constitutional provisions of other States upon the same subject.

Thus the constitution of Alabama (1875) provides, article 1, section 9, as follows: "That no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the militia and volunteer forces when in actual service, or, by leave of the court, for misfeasance, misdemeanor, extortion and oppression in office, otherwise than is provided in this Constitution: *Provided*, that in cases of petit larceny, assault, assault and battery, affray, unlawful assemblies, vagrancy, and other misdemeanors, the general assembly may, by law, dispense with a grand jury, and authorize such

prosecutions and proceedings before justices of the peace, or such other inferior courts as may be by law established." And see *Thomas* v. *State*, 107 Ala. 61 (1894).

The provisions of article II, section 8, of the constitution of Arkansas (1874) are as follows: "No person shall be held to answer a criminal charge unless on the presentment or indictment of a grand jury, except in cases of impeachment or cases such as the general assembly shall make cognizable by justices of the peace, and courts of similar jurisdiction; or cases arising in the army and navy of the United States; or in the militia when in actual service in time of war or public danger."

The constitution of Mississippi in force in 1884 provided in article I, section 31, as follows: "No person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces or the militia when in actual service: *Provided*, that the legislature in cases of petit larceny, assaults, assault and battery, affray, riot, unlawful assembly, drunkenness, vagrancy, and other misdemeanors of like character, may dispense with an inquest of a grand jury, and may authorize prosecutions before justices of the peace or such other inferior court or courts as may be established by the legislature; and the proceedings in such cases shall be regulated by law."

This provision was thus construed by the Supreme Court of Mississippi in *Ex parte Wooten*, 62 Miss. at p. 176, as follows: "Section 31, art. I, of the constitution of this State empowers the legislature to authorize prosecutions before justices of the peace or other inferior courts of its creation in cases of misdemeanors of the character enumerated, viz.: petit larceny, assault and battery, and others mentioned for illustration, and to regulate the proceedings in such cases. So far from its being the constitutional right of one thus prosecuted before a justice of the peace or other inferior court to be tried by a jury, it may be seriously doubted whether the introduction of a jury by act of the legislature is not a marring of the constitutional scheme for the trial of petty offenses by a justice of the peace or other inferior court to be created. There is no allusion to a jury in the section cited, and the language employed suggests a

trial by the justice of the peace or other court, rather than by
a jury in such court. *Judgment affirmed.*"   And see also art.
3, § 27, Const. Miss. (1890).

Another statement of the same matter is to be found in the
constitution of Iowa (1857, art. I, § 11, re-enacting art. 1, § 11,
Const. of 1846): "All offenses less than felony, and in which
the punishment does not exceed a fine of one hundred dollars,
or imprisonment for thirty days, shall be tried summarily
before a justice of the peace, or other officer authorized by law,
on information under oath, without indictment, or the inter-
vention of a grand jury, saving to the defendant the right of
appeal; and no person shall be held to answer for any higher
criminal offense, unless on presentment or indictment by a
grand jury, except in cases arising in the army or navy, or in
the militia, when in actual service, in time of war or public
danger."

In *Bryan* v. *State,* 4 Ia. on p. 353, the Supreme Court of
Iowa thus declares the construction of this provision: "The
defendant further urges, that section 11 of article 1 of the con-
stitution of Iowa, has reference to cases cognizable before
justices of the peace at the time of its adoption, and that their
jurisdiction must be limited to such causes.   This construction
can not be admitted.   The section has a prospective sense and
embraces such causes as may be made so cognizable."   And see
*State* v. *Beneke,* 9 Ia. p. 207, and *Zelle* v. *McHenry,* 51 Ia. 572.
See also *Rowan* v. *State,* 30 Wis. at p. 144; *Miller* v. *State,* 29
Neb. p. 440; *Dillingham* v. *State,* 5 Ohio St. p. 282, and *State* v.
*Dover,* 9 N. H. 468.

*U. S.* v. *Brady,* 1 Mackey, 588, was a case in which the argu-
ment was protracted for six days by Messrs. Bliss, Brewster,
and Cook for the government, and Messrs. Wilson, Ingersoll,
Chandler, and Totten for the accused, and the Supreme Court
of the District of Columbia observes (p. 589) that: "Questions
of deep interest have been treated with a breadth of view, a
depth of research and a force of reasoning, on both sides, never
before surpassed in this court," and continuing, says (p. 590):
"The fifth article of the Amendments to the Constitution pro-
vides that no person shall be held to answer for a capital or

otherwise infamous crime, unless on a presentment or indictment by a grand jury; except in cases arising in the land and naval forces, etc. Section 1040 of the Revised Statutes of the District of Columbia declares that the police court shall have original and exclusive jurisdiction of all offenses against the United States committed in the District, not deemed capital or otherwise infamous crimes; that is to say, of all simple assaults and batteries and all other misdemeanors not punishable by imprisonment in the penitentiary. These two enactments, constitutional and legislative, embrace all the offenses against the United States that can be committed within the District of Columbia, and group them into two classes, viz.: those which are capital and otherwise infamous and those which are not capital or otherwise infamous. The offense charged in this information must be in one category or the other. It is not capital, and it is a misdemeanor, but it must be either infamous or not infamous. If the former, the Constitution requires it to be tried on a presentment or indictment of a grand jury. If the latter, the police court has original and exclusive cognizance of it, and it can only be tried here upon an appeal from that court. The effect, therefore, of establishing that this is not an infamous offense, is to throw it into the police court for trial in the first instance." And see *Mackin* v. *U. S.,* 117 U. S. p. 354.

The question here presented was presented in the recent case of *State* v. *Cram*, 84 Me. 271 (1892), in which are construed the provisions of article 1, section 7, of the declaration of rights contained in the constitution of Maine. This section is identical in its provisions with the provisions of our own constitution with the single exception that the word "usually"precedes the words "cognizable by a justice of the peace." And the court say: "The defense contends that, by force of the above exceptive clause, what justices of the peace did in 1820, they and all kindred courts can now do and no more; and that all offenses not then usually cognizable by such justices are to be denominated felonies or infamous crimes.

"It will be noticed that the above qualifying clause can not be read literally and be sensible. The literal construction

would be that persons shall not be held for an infamous crime unless upon indictment, excepting such infamous crimes as are usually cognizable by justices of the peace. No such exception is contained in the corresponding declaration in the fifth amendment to the constitution of the United States, of which ours, as far as that goes, is a copy.

"But the meaning is evident enough. The principal provision was not to trench upon or in any way abridge the jurisdiction of justices of the peace as usually exercised by them. There is, however, no assertion or implication that justices of the peace may not possess an enlarged jurisdiction at a future time according to the growing requirements of the administrative law, provided always that they be not allowed to assume jurisdiction to punish infamous crimes or felonies. And an assault punished by a sentence to jail for sixty days or six months is by no means to be regarded as a felony. Can it be reasonably supposed, because the maximum jurisdiction of justices of the peace when our constitution was adopted was in civil cases twenty dollars, and in criminal cases the power to sentence for thirty days, that the legislature is prohibited from ever raising that jurisdiction to the extent of a dollar or a day? If it be so, there has been a multiplicity of infringements upon such constitutional inhibition. The clause in question was intended, not to restrict the jurisdiction of justices of the peace, but to prevent what might otherwise be a supposable restriction. And the words 'usually cognizable' meant such as at any time might be usually so cognizable. It was a provision for the future. It is the language of the past speaking in the present. Construed to-day, it means 'as are (now) usually cognizable by justices of the peace.' "

The foregoing citations indicate with greater clearness, it may be, than does the language used in our own constitution, the constitutional guaranty sought to be established and shed light upon the exception of "offenses cognizable by justices of the peace," as therein used. But there is a further consideration which is deserving of notice. At the time of the adoption of the constitution in 1842 the general provisions of "An act concerning crimes and punishments," passed in 1838, were still

in force.    Sections 18 and 25 of chapter 9 of this act are as follows:

"SEC. 18.    The several courts of common pleas in this state, shall have cognizance of all crimes and offences which shall be committed within their respective counties, excepting only those for which a person convicted may be sentenced to death, to imprisonment for life, or for a term of seven years or more, and upon all persons convicted before them, of any crime or offence, shall inflict such punishment as is or shall be by law prescribed."

"SEC. 25.    No person except upon indictment found by a grand jury, shall be put on trial for any crime or offence before the supreme judicial court or either of the courts of common pleas in this state, except in case of an appeal from the sentence of some magistrate."

The offence charged in the complaint now before the court was also substantially defined and punished in the same act, chapter 6, section 12, as follows:    "Every person who shall be convicted of cruelly using, beating or tormenting any horse, ox or other animal, whether belonging to himself or another, shall be fined not exceeding fifty dollars."

It is contended by the respondent that, inasmuch as this offence was then punishable only upon indictment and was not then cognizable by a justice of the peace, the only procedure now to be had is to be had upon an indictment and not otherwise.    It will be seen, however, that this offence was then only indictable because the statute conferred jurisdiction of it upon the Court of Common Pleas and not upon a justice of the peace. It is not denied that it was then competent for the legislature to make it cognizable before a justice of the peace, inasmuch as it was certainly not a felony at the common law.    Indeed, by the provisions of section 5 of chapter 9 of said act, while the general criminal jurisdiction of a justice of the peace was limited to offences punishable by a fine of $20, there is also further provision made for those offences which are "or shall be declared within the jurisdiction of a justice of the peace to try and determine."

It is contended further by the respondents that the exception

in the proviso is of "such offenses as are cognizable by a justice of the peace," and not of such "infamous crimes" as were so cognizable; and, consequently, that crimes and offences not infamous and not cognizable by a justice of the peace are to be considered as within the provisions of the article and to be punished only upon indictment or presentment by a grand jury. To this contention it is sufficient to reply that the inhibition is only against the prosecution of "capital or other infamous crimes," and if there were no exception in the section it could not be contended that any other crimes were included. That there are certain exceptions in respect of cases of impeachment and in cases arising in the land and naval forces and the militia is a diminution of the scope of the original provision and not an enlargement of it to the inclusion of cases not specifically within its terms.

What, then, is the true meaning to be given to the expression "infamous crimes," as used in the constitution? Different tests have been applied at different times and in other jurisdictions by which the meaning of these words was to be determined. Thus it is said by Judge Cooley (Const. Law, 291), that: "An infamous offence is one involving moral turpitude in the offender or infamy in the punishment, or both;" continuing, however, "but the punishment of the penitentiary must always be deemed infamous and so must any punishment that involves the loss of civil or political privileges." So Mr. Justice Gray in *Ex parte Wilson*, 114 U. S. p. 422, says, in construing those words as they occur in article V of the amendments to the United States Constitution, that it was formerly held that: "There are two kinds of infamy; the one founded in the opinions of the people respecting the mode of punishment; the other in the construction of law respecting the future credibility of the delinquent. . . .

"At that time, it was already established law, that the infamy which disqualified a convict to be a witness depended upon the character of his crime and not upon the nature of his punishment. . . . But the object and the very terms of the provision in the Fifth Amendment show that incompetency to be a witness is not the only test of its application.

"Whether a convict shall be permitted to testify is not governed by a regard to his rights or to his protection, but by the consideration whether the law deems his testimony worthy of credit upon the trial of the rights of others. But whether a man shall be put upon his trial for crime without a presentment or indictment by a grand jury of his fellow citizens depends upon the consequences to himself if he shall be found guilty."

It requires but slight examination to observe the changes of public opinion in both respects. Thus, forgery at the common law was only a misdemeanor. *State* v. *Murphy,* 17 R. I. 702. But on the other hand, larceny was a felony at common law (1 Bish. Cr. L. § 679), and by the early legislation of this colony (Act of 1647, I R. I. Col. Rec. 174) the stealing of an article of more than twelve pence in value was held to be grand larceny and was punished by whipping and confinement in the house of correction for the first offence, by branding and such confinement for the second offence, and by forfeiture of goods and chattels as follows: "And he that committeth Grand Larcenie (which is where the thing stolen exceeds the value of twelve pence), for the first time, being lawfully convict, shall be severely whipt, and shall serve in the house of correction vntill the partie or owner bee satisfied twofold for what he hath stolen; and for the second time he shall be branded in the hand, and serve in the house of correction untill the partie be satisfied twofold for what he hath stolen, and the Colonie four fold so much; and moreover, we do declare, that a thief's goods and chattells have been still accounted the King's Custome."

Severe as this statute now seems, it nevertheless mitigated the rigors of the common law in respect of the punishment for this offence. Says Lord Coke (3 Inst. 108): "It appeareth by all our ancient authors, *ubi supra,* and by the statute W. I. that there is grand larceny, and petit larceny, distinguished so by the value; for if the personall goods stoln amount to above the value of twelve pence, then is it grand larceny, and if it be under the value of twelve pence, then it is petit larceny, for which he shall forfeit all his goods, and suffer some corporall punishment as whipping, &c. And this was the ancient law before the conquest." The Statute of Westminster 1 (passed

in the third year of Edward I.) (1275) provides that those who were indicted for larceny upon inquests taken before sheriffs or bailiffs by their offices, or upon light suspicion, or petty larceny "not amounting above the value of twelve pence," should be bailable. ("Mes ceux qi sount enditez de larcine per enquestes des Viscountes ou de Baliffs prises de lour offices, ou per leger suspicion, ou per petit larcine qe ne amonte outre la value de XII. deniers.") There follows a citation from the Mirror (Speculum Justiciariorum, Cap. IV § 16) (*circa* 1290) to the effect that the law having regard for the souls of offenders has so limited both robbery and larceny as that the judgment of death shall not be inflicted unless the larceny be of that which is at least of the value of twelve pence. ("Et tout soit que la ley ne eyt regard forsque al ceures des peuchers nequidemt limit le quantitie del robbery et larceny en cest manner, crestassavoir que nul ad judgment de la mort, si non larceny, etc. ne passont 12 deniers de sterlings.") See also 3 Inst. 218. And Lord Hale states (I Pleas of the Crown, 503) as follows: "But the same law touching the punishment of grand larciny with death, seems to have been fixed and settled ever since the time of Henry II." (1189) "and Bracton, that wrote in the time of Henry III." (1272) "takes it as a thing settled and commonly practiced in his time."

Thus, in his De Legibus Angliæ, Lib. III, cap. XXXII, p. 151, De Corona, Bracton observes that there is a distinction between the theft of that which is of great importance and that which is of trifling consequence, and that regard must accordingly be had to the nature of the thing stolen. That for petty larceny no Christian should be put to death but should be otherwise chastised lest an easy remission tempt other delinquents and evil deeds remain unpunished. And so, according to the nature of the thing stolen, if the thief is convicted, he should either be put to death, or should abjure the county, city, burgh or vill, or be dismissed with stripes. ("*Est etiam furtu de re magna et re minima et ideo habenda erit ratio quae vel qualis sit res quae furatur: Pro parvo enim latrocinio, vel p parva re, nullus christianus morti tradatur, sed alio modo sic castigetur, ne facilitas veniae aliis materiam prebeat delinquendi, et ne maleficia remaneant impunita.. Et ideo secundum qualitatem rei furatae*

*et valorem, si fur convictus fuerit, aut morti tradatur, aut regnum abjuret vel patriam, comitatum, civitatem, burgum vel villam, aut fustigetur, et sic castigatus dimittatur."*)

Again, perjury was only a misdemeanor at common law (2 Bish. Cr. L. § 1054), and by the Act of 1647, *supra*, (I R. I. Col. Rec. 181) was punishable only by a fine of £5 and a disqualification to hold office and to thereafter testify, in addition to a liability to satisfy any loss created by his false testimony, as follows: "And because many, in giving engagement or testimony, are usually more over awed with the Penaltie which is known, than with the most High, who is little known in the Kingdoms of men.

"It is, therefore, further agreed and ordered, that he that falsifieth such a solemn profession or testimony, shall be accounted among vs as a perjured person, and his penaltie shall be that, looke what detriment is or might be brought vpon others by falsifying his engagement or testimony, the same shall fall upon himself. He shall also forfeit five pounds, and be disenabled eyther to beare office, or to give Testimony in any Court of Record, vntill the Colonie release him; and this forfeiture and detriment, the partie being lawfully convicted, shall be, one halfe to the King's Custome, and the other shall go to the partie grieved that sues for it, by action of debt or bill; but in case the partie be not worth so much, then shall he be imprisoned in the House of Correction till it be wrought out, or else sett in the Pillory in some open place, and have his Eares nayled thereto; and then may the partie grieved receive his damages; and the procurer shall have the like penaltie. See 5 Eliz. 9."

It is to be observed that the act of Parliament thus incorporated in this colonial statute (5 Eliz. cap. 9): "An act for punishment of such as shall procure or permit any wilful Perjury," passed in 1562, provided in section 9 thereof that concurrent jurisdiction should be given to the judges of any of the Queen's Courts and to justices of the peace that any of them "shall have full Power and Authority by Virtue hereof, to inquire of all and every the Defaults and Offences, perpetrated, committed or done contrary to this Act, by Inquisition, Presentment,

Bill of Information before them exhibited, or otherwise lawfully to hear and determine the same, and thereupon to give Judgment, award Process and Execution of the same, according to the Course of the Laws of this Realm."

At the time of the adoption of the State constitution jurisdiction was vested in a justice of the peace in cases of the ancient felony of larceny when the value of the property stolen was not in excess of $20 ("Act Concerning Crimes and Punishments," 1838, chapter 9, section 5), while the former ancient misdemeanor of perjury was then punishable only upon indictment, by imprisonment not exceeding twenty years (*Ibid.* cap. 4, § 1), a maximum punishment which was double the maximum punishment then provided for manslaughter (*Ibid.* cap. 2, § 2), and the ancient misdemeanor of forgery was so punishable by imprisonment for not more than ten years, nor less than two years. Among the questions presented to the framers of this clause of the constitution was an adequate description of larceny. At common law it has been seen that it was a capital offence if the property stolen exceeded the value of twelve pence. It was, moreover, an infamous offence at common law. (*Opinions of Justices*, 4 R. I. 583.) And it was also a felony irrespective of the value of the property stolen. Nevertheless that which constituted grand larceny at the common law and by the early legislation of the colony was in 1842 within the summary jurisdiction of a justice of the peace when the property stolen did not exceed twenty dollars in amount, although the power of a justice of the peace to punish therefor did not exceed the imposition of a fine of twenty dollars or confinement in jail for a term not exceeding three months. It is apparent, therefore, that such larceny was not inaptly included in this section of the constitution as one of the "offences cognizable by a justice of the peace." And that the words so used were prospective in their operation is confirmed by the language used in section 7 of article X of the constitution, viz.: "The other towns (except New Shoreham and Jamestown) and the city of Providence may elect such number of justices of the peace as they may deem proper. The jurisdiction of said justices and wardens shall be regulated

by law." It is manifest that, if the respondent's contention be adopted—that there must be a presentment or indictment by a grand jury in all cases beyond the jurisdiction of a justice of the peace at the time of the adoption of the constitution— there could be no increase in the criminal jurisdiction of a justice of the peace unless a grand jury should attend before each such justice. The statement of this proposition is its sufficient refutation.

We are of the opinion, also, that the provisions of section 8 of chapter 8 of this act are of importance in the determination of the meaning to be given to the expression "infamous crime," as used in the constitution. That section is as follows: "Every person who shall be sentenced under any provision in this act, to imprisonment for life, or for the term of one year or more, for any offence, shall forever thereafter be incapable of being elected to any office of honor, trust or profit in this state, and of acting as a freeman therein, and of giving testimony as a witness, before any tribunal in this state, unless such sentence be reversed."

By section 10 of the same chapter all such persons were to be sentenced to the State prison, a provision which still remains in force (see cap. 285, § 37, Gen. Laws) and which still carries with it a forfeiture of certain civil and property rights such as the right to alienate property or make a will (§ 53) and the right to vote or to hold office (§ 62).

(1)   It would serve no useful purpose to multiply citations. Suffice it to say that at the time of the adoption of the State constitution imprisonment in the State prison was the gravest punishment known to the law of the State for crimes less than capital crimes, and that it had succeeded to the former punishments of whipping, branding, and standing in the pillory. Such imprisonment, moreover, then and now subjected the convict to the wearing of the prison uniform (cap. 291, § 34, Gen. Laws) as well as to hard labor without remuneration (Gen. Laws, cap. 285, § 37); and as said by Mr. Justice Gray in *Ex parte Wilson*, 114 U. S. p. 429: "Imprisonment at hard labor, compulsory and unpaid, is, in the strongest sense of the words, 'involuntary servitude for crime,' spoken of in the

proviso of the Ordinance of 1787, and of the Thirteenth Amendment of the Constitution by which all other slavery was abolished. . . . ' Unless this is infamous, then there is now no infamous punishment other than capital.' " And see *State v. Nolan*, 15 R. I. 529; *Mackin* v. *U. S.*, 117 U. S. p. 348; *Hurtado* v. *California*, 110 U. S. 516; *U. S.* v. *Dewalt*, 128 *U. S.* 393; *In re Claasen*, 140 U. S. 205; *Wong Wing* v. *U. S.*, 163 U. S. 234; *Bolln* v. *Nebraska*, 178 U. S. 83, and *Maxwell* v. *Dow*, 176 U. S. 581 (1899).

We are therefore of the opinion that the expression "infamous crimes" as used in the constitution designates crimes which at any given time may be punished by imprisonment in the state prison for a term of one year or more, and that crimes or offences punishable otherwise, as by fine only or by confinement elsewhere or for a shorter term than one year, are not "infamous crimes," within the purview of this section of the constitution. It is manifest that the offence charged in this complaint is not such an "infamous crime," and it follows that there is no constitutional guaranty of presentment or indictment by a grand jury except as to such "infamous crimes," and that it is entirely competent for the legislature to vest jurisdiction over all crimes and offences less than these in a District Court or other tribunal not attended by a grand jury and to authorize prosecutions thereof by complaint. And it is equally true that the legislature may make lesser offences than "infamous crimes," indictable under the general powers contained in article X, sections 1 and 2, of the constitution, which authorize the bestowal of jurisdiction upon courts inferior to the Supreme Court, at the pleasure of the General Assembly.

It follows, also, that it is competent for the General Assembly to vest concurrent jurisdiction in the District Court and in a court attended by a grand jury over any crimes or offences which are not punishable by death or by imprisonment in the State prison for one year or more.

The case of *Jones* v. *Robbins*, 8 Gray, 329, is cited by the respondent in contradiction of this view; but it will be observed that in that case it was held that the police court was without

power because it was authorized to punish by the "infamous punishment of imprisonment in the state prison," Chief Justice Shaw observing (p. 350) that the decision rested upon this ground, viz.: "Not because it confers jurisdiction on a police court, to take cognizance of an aggravated larceny, on complaint, and try and pass sentence; but because it authorizes a police court to punish by confinement in the state prison, both for aggravated and simple larceny." And see *State* v. *Sinnott et al.*, 89 Me. 42 (1896), affirming *State* v. *Cram, supra.*

The motion to quash is denied, and the case is remitted to the District Court of the Fourth Judicial District for sentence.

*James C. Collins, Jr.*, for State.

*John W. Hogan and Philip S. Knauer*, for defendant.

