265 A.2d 644.

WARREN VINCENT PICILLO *vs.* JOHN F. SHARKEY, *Acting Warden.*

MAY 22, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

148

POWERS, J. This cause is before us on a writ of habeas corpus issued out of this court for reasons hereinafter appearing.

The petitioner was indicted, tried to a jury and convicted of being a common gambler within the meaning of G. L. 1956, §11-19-18. After his motion for a new trial was denied by the trial justice, he was sentenced to serve one year in the Adult Correctional Institutions and thereafter claimed an appeal under Rule 73 of the Super. R. Civ. P. The jurisdictional procedure for review in this court being by way of a bill of exceptions, his claim of appeal was futile and there then followed a series of petitions to this court, each of which was similarly unavailing.[1]

On May 28, 1969, petitioner commenced service of the one year sentence imposed. Thereafter, he filed an application for habeas corpus in this court, and on July 25, 1969, we ordered the writ to issue and directed the Superior Court to admit petitioner to bail pending determination of the issues raised in the application for the writ.[2]

It appears that some time after the commencement of the jury trial in the Superior Court, it was discovered by

[1] The petitions referred to are reported in State v. Picillo, 103 R. I. 763, 236 A.2d 261; State v. Picillo, 105 R. I. 364, 252 A.2d 191; State v. Picillo, 105 R. I. 786, 253 A.2d 245.

[2] This order is reported in Warren Vincent Picillo v. John F. Sharkey, Acting Warden, 106 R. I. 812, 255 A.2d 172.

the trial justice that, although the jacket of the indictment bore the name of Warren Vincent Picillo, petitioner here, the body or accusatory portion of the indictment contained the name of Raymond Edward Picillo. With this discovery, the assistant attorney general moved that the indictment be amended by striking the name of Raymond Edward Picillo and substituting that of the instant petitioner. This motion was made in accordance with the provisions of §12-12-4. It provides:

> "Any defect or want of substance in any complaint or criminal process, other than an indictment, may be amended and supplied in the discretion of the court and the accused shall plead to such amended complaint or process, and any defect or want of substance in any indictment may be amended and supplied with the consent of the accused."

It is not disputed that the trial justice thereupon inquired of defendant, petitioner here, whether he consented to such amendment, pointing out that consent was required by statute. It further appears that, after consultation with his attorney, petitioner consented and the indictment was amended in accordance with the state's motion. The trial then continued, and petitioner was convicted as aforesaid. When the instant proceedings came on to be heard in this court, petitioner contended in his oral argument and brief that, to the extent that §12-12-4 purported to authorize the substitution of a different person than that accused by the grand jury, it was unconstitutional for two related reasons. These are, in essence, that the substitution of a different accused is tantamount to an ouster of the grand jury's constitutionally exclusive jurisdiction to return a true bill[3] and that, absent such a return by the

---

[3]The pertinent constitutional provision relied on is contained in article I, section 7 of the Rhode Island constitution and reads as follows:

"No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury * * *."

grand jury, the Superior Court lacked jurisdiction to try petitioner for the infamous crime of being a common gambler as the same is defined in §11-19-18. See *State* v. *Nichols*, 27 R. I. 69, 60 A. 763.

*State* v. *McCarthy*, 17 R. I. 370, 22 A. 282, would appear to be dispositive of petitioner's first contention, namely, that the grand jury's constitutionally exclusive jurisdiction to return an indictment cannot, in essence, be circumvented by the state through recourse to §12-12-4 which, when invoked by the state to substitute someone other than the person named by the grand jury, results in discharging the person named in the indictment. In *McCarthy*, this court held that a substantive amendment to an indictment could be achieved only in the presence of and with the consent of the grand jury, "or under Pub. Stat. R. I. cap. 248, §4, with consent of the accused." Said Pub. Stat. R. I. cap. 248, §4 was the precursor to §12-12-4, pursuant to which the indictment here under consideration was amended with the consent of the accused.

However, petitioner argues, as we understand him, that there is a controlling distinction between an amendment which goes to the offense charged by the grand jury, which amendment would still relate to the accused named therein, and an amendment which purports to substitute as accused one against whom the grand jury did not return a true bill. He relies on 14 A.L.R. 3d, §4 at 1378-79 and the cases therein annotated as support for this proposition.[4] An examination of these cases discloses that, as to those involving state jurisdiction, the accused objected in each case. As to *United States* v. *Consolidated Laundries Corp.* (n.4), it suffices to know that there was no federal statute

---

[4]The cases so cited are: *United States* v. *Consolidated Laundries Corp.*, 291 F.2d 563; *O'Brien* v. *Commonwealth*, 260 Ky. 572, 86 S.W.2d 309; *Commonwealth* v. *Brown Forman Distillers Corp.*, 307 Ky. 597, 211 S.W.2d 858; *Commonwealth* v. *Buzzard*, 46 Va. (5 Gratt) 694.

authorizing amendment with the consent of the accused. Hence, in that case, the court applied the common law rule adhered to by the United States Supreme Court namely that judicial amendment lacks sanction. To the same effect see *Carney* v. *United States,* 163 F.2d 784, on which petitioner also relies.

Be all this as it may, we are persuaded, as argued by the state in its memorandum objecting to the issuance of the writ, that petitioner's election to proceed with the trial after consultation with his attorney constituted a waiver of indictment as authorized by §12-12-19.[5]

In contravention of this provision, petitioner makes his second point, namely that, absent the return of an indictment for an infamous crime, the Superior Court lacks jurisdiction to try an accused for the offense charged. He premises this on the language "No person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury * * *" as the same is contained in article I, section 7 of the Rhode Island constitution. (See n. 3). That this language does not deprive the trial court of jurisdiction to proceed with the trial of an accused on the latter's waiver of the constitutional protection against being held to answer for an infamous crime unless on presentment or indictment by a grand jury, which waiver was made in accordance with a statutory provision therefor was implicitly settled by the

---

[5]"Waiver of Indictment and Plea of Guilty.—Whenever any person shall have been bound over to the superior court by a district court upon a complaint charging him with any offense other than murder, which is not within the jurisdiction of said district court to try and determine, such person may, with the leave of the superior court to which he is so bound over, waive the finding and filing of an indictment of a grand jury against him for said offense and with such leave such person may plead guilty, not guilty or nolo contendere and thereafter all proceedings shall be taken and had in the same manner as would have been the case had such pleas been entered to an indictment regularly found and filed."

United States Supreme Court in *Smith* v. *United States,* 360 U. S. 1, 79 S.Ct. 991, 3 L. Ed. 2d 1041. There the Court was called upon to consider the validity of Rule 7(a) of the Fed. R. Crim. P., which rule authorizes an accused to waive indictment in all but capital cases. Prior to the adoption of the federal rules, the United States Supreme Court had consistently adhered to the principle stated in *Ex parte Bain,* 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849, namely, that the return of an indictment by a grand jury was a prerequisite condition to a trial court's jurisdiction to try an accused for the offense charged.

Article V of amendments to the Constitution of the United States provides, in pertinent part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury * * *." That the significant language thereof is identical with the material language of article 1, section 7, of the Rhode Island constitution is readily apparent. Compare n. 3.

In *Smith,* defendant was charged with the offense of kidnapping. He waived indictment as purportedly authorized by Rule 7(a), pleaded guilty, and was sentenced to thirty years. Subsequently, in certiorari proceedings, the United States Supreme Court set aside the conviction and sentence on the ground that the crime of kidnapping being one which might be punishable by death, the trial court lacked jurisdiction to proceed on information. This result was reached because Rule 7(a), under which Smith purported to waive indictment, expressly excluded capital offenses.

However, commenting on the salutary effect on the promotion of justice brought about by the right of an accused to waive indictment on all but capital offenses as authorized by Rule 7(a) of the Fed. R. Crim. P., the court cited

with approval the holding of the fifth circuit court in *Bark-man* v. *Sanford,* 162 F.2d 592.

In *Barkman,* the court conceded that, if the language contained in article V of amendments must be construed as limiting the jurisdiction of trial courts to proceed against one accused of an infamous crime only after the return of an indictment, then the question would not be one of a defendant waiving a personal right, but would rather constitute an offer by the accused to confer jurisdiction on the trial court. The court then proceeded to analyze the intendment of the fifth amendment phraseology " 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *.' " It stressed that the emphasis was on "no person shall be held to answer" for the reason that the language would most likely have been "No court shall hold any person to answer" if a grand jury's return of an indictment were intended to be a prerequisite condition to the jurisdiction of the trial court. That the language employed in the fifth amendment was therefore designed to cloak an accused with the protection of a personal right which, like other rights contained in the fifth and sixth amendments, could be waived seemed self-evident to the court.[6]

The court went on to point out, in substance, that construing the phraseology relating to the necessity of an indictment as being a right personal to an accused, rather than a limitation on the trial court's jurisdiction, provided such accused with all the protection necessary, since he could freely refuse to waive, and gave him the additional

---

[6]The fifth and sixth amendment rights referred to by the court and long-established as personal rights which could be waived are, *inter alia,* protection against double jeopardy, self-incrimination and the rights to trial by jury, to be confronted by witnesses against him and the assistance of counsel.

advantage of not being compelled to await a grand jury's return. Having exercised the right to waive indictment, the court emphasized that an accused was still at liberty to insist on his other constitutional safeguards.[7]

Having determined that the instant petitioner's election, after consultation with counsel, to proceed with the trial which resulted in his conviction was a waiver under §12-12-19, we conclude that the writ heretofore issued should be quashed, and the case remitted to the Superior Court for the revoking of bail and other appropriate proceedings.

*Leo Patrick McGowan, John P. Bourcier*, for petitioner.

*Herbert F. DeSimone*, Attorney General, *Richard J. Israel*, Assistant Attorney General, for defendant.

___

[7]For an excellent dissertation on the same question see *DeGolyer* v. *Commonwealth*, 314 Mass. 626, 51 N.E.2d 251.