385 A.2d 658.

PETITION OF RONALD F. CREPEAU-CROSS.

APRIL 17, 1978

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

Doris, J.   On March 9, 1962, the petitioner, Ronald F. Crepeau-Cross, pleaded nolo contendere to a complaint charging him with three counts of "lewd, wanton and lascivious" conduct in violation of G.L. 1956 §11-45-1. On April 13, 1962, the petitioner received a three-year sentence which was suspended on condition of medical treatment and three years' probation.

In June of 1976, petitioner began procedures seeking to expunge all criminal records maintained by the Seventh Division District Court and several law enforcement agencies in connection with his 1962 conviction. After a series of letters failed to result in the expunction of all petitioner's criminal records, he filed a petition in the Seventh Division District Court seeking a judicial order for expunction. His petition asked the court to direct the clerk of the Seventh Division District Court, the Woonsocket Police Department and the Department of the Attorney

General to destroy all records in their possession relating to the 1962 conviction. A hearing was held on the petition on August 17, 1976.

After the hearing, the District Court judge denied the petition for expunction on two alternative grounds. First, the judge found that more than one year had elapsed since the completion of the three-year probationary period imposed upon petitioner for the 1962 conviction and, therefore, the District Court lacked jurisdiction to grant the petition. Second, he found that a complaint and summons were not within the purview of the expunction statute and, therefore, he could not order their destruction.

Crepeau-Cross then filed a petition for certiorari with this court. We granted the petition and issued the writ on December 31, 1976. *In re Crepeau-Cross*, 117 R.I. 962, 368 A.2d 577 (1976).

The sole issue before us is the correctness of the decision of the District Court judge in denying the petition to expunge.

The expunction of criminal records relating to a conviction is controlled by G.L. 1956 (1969 Reenactment) §12-1-13.[1] A petitioner, having been convicted of a

---

[1]The full text of G.L. 1956 (1969 Reenactment) §12-1-13 reads as follows:

"Any fingerprint, photograph, physical measurements or other record of identification, heretofore or hereafter taken by or under the direction of the attorney-general, the superintendent of state police, the member or members of the police department of any city or town, or any other officer authorized by this chapter to take the same, of a person charged with a misdemeanor, prior to the final conviction and subsequent to conviction of such person for such misdemeanor, shall be destroyed by the officer or department having the custody or possession thereof upon demand of the person so photographed, measured or otherwise identified, provided, that such person has no record of conviction of a felony, and provided that such person has successfully completed any sentence or probationary period imposed upon him in connection with such misdemeanor and has not been charged with or convicted of any other crime for a period of five (5) years from the date of completion of such sentence or probationary period, and further provided that such person was not originally charged with a felony or a misdemeanor carrying as a possible penalty a fine of more than five

misdemeanor, may seek to have "[a]ny fingerprint, photograph, physical measurements or other record of identification" maintained in connection with his misdemeanor arrest and conviction expunged only when he has successfully completed the sentence or probationary period imposed upon him for committing the misdemeanor and can demonstrate that he has not been charged with any other crime for a period of five years following the completion of the sentence or probationary period. The statute does not permit the expunction of identification records in cases where the petitioner was convicted of a felony or was initially charged with a felony but had that charge against him reduced to a misdemeanor prior to conviction.

Procedurally, §12-1-13 permits a District Court judge, upon petition and hearing, to order all identification records expunged whenever a petitioner is entitled to such expunction but the law enforcement agencies in possession of such records refuse to do so.

The initial reason advanced by the District Court judge for his denial of the petition was that one year had elapsed since the completion of petitioner's probationary period, and therefore, the court had no jurisdiction to hear the petition. Presumably, this ruling was based on §9-21-2,

---

hundred dollars ($500) or a penalty of one (1) year or more which charge was reduced to a lesser offense.

"For all intents and purposes the destruction of the aforementioned conviction shall operate and have the same effect and force in any and every situation and case as though no such arrest, arraignment or conviction ever occurred or took place.

"The court in which such conviction took place shall, if any person shall refuse to carry out any of the [provisions] of this section, upon petition under oath setting forth sufficient facts to warrant such destruction of records, assign said petition for hearing within ten (10) days provided at least five (5) days notice of such hearing is given to the person having custody of such record by mailing him a copy of said petition with the time, date and place of hearing endorsed thereon.

"If the court finds that the petitioner is entitled to relief, it shall order such destruction as provided herein."

which permits a court to relieve a party from "a final judgment, order, decree, or proceeding entered therein" for any of several stated reasons. Any motion of such relief must be made within one year following such judgment, order, decree or proceeding.

It is our opinion that §9-21-2, which relates exclusively to civil judgments and orders, does not apply to proceedings brought pursuant to §12-1-13. Those petitioners seeking the expunction of criminal records must first serve their sentence or term or probation. Thereafter, they must demonstrate that they have not been charged or convicted of any other offense for a period of five years from the date of the completion of their sentence or probation.

To hold that §12-1-13 is governed by the one-year limitation of §9-21-2 would be to nullify the judicial enforcement provisions of §12-1-13. Because the one-year limitation on jurisdiction under §9-21-2 would have long since expired in every case, the District Court would never have jurisdiction to grant a petition to expunge. We will not construe statutes so as to achieve meaningless or absurd results. *State* v. *Sprague,* 113 R.I. 351, 322 A.2d 36 (1974); *Berberian* v. *Berberian,* 109 R.I. 273, 284 A.2d 72 (1971); *Town of Scituate* v. *O'Rourke,* 103 R.I. 499, 239 A.2d 176 (1968).

The District Court judge further ruled that §12-1-13 does not permit the expunction of either a criminal complaint or a summons. This ruling alone, however, is not sufficient to allow us to uphold his denial of the petition to expunge. Assuming *arguendo* that the ruling is a correct interpretation of §12-1-13, it has no bearing on the expunction of petitioner's other identification records on file with the Woonsocket Police Department or the Department of the Attorney General.

The state, however, advances the proposition that we may uphold the ruling of the District Court judge because

the result he reached was correct, albeit for the wrong reasons. The argument presented by the state is that petitioner was convicted of a felony in 1962, and under §12-1-13, felony conviction records may not be expunged.

It is well settled that we will accept a lower court decision which is correct even though we do not accept the reasoning upon which it rests. *DiRaimo* v. *DiRaimo*, 117 R.I. 703, 708, 370 A.2d 1284, 1287 (1977); *State* v. *Carillo*, 113 R.I. 32, 36, 317 A.2d 449, 452 (1974); *State* v. *Carsetti*, 111 R.I. 642, 648, 306 A.2d 166, 169 (1973); *Bric's Market, Inc.* v. *State*, 105 R.I. 572, 577, 253 A.2d 590, 592 (1960).

The petitioner was convicted of being a "lewd, wanton and lascivious" person in violation of §11-45-1. At the time of petitioner's conviction, and until its repeal by P.L. 1977, ch. 98, that statute imposed a sentence in the Adult Correctional Institutions on any person convicted of committing any one of a multitude of evils, including "lewd, wanton or lascivious" conduct. In 1962, when petitioner was convicted of violating the statute, the penalty provided for was not more than three years in the Adult Correctional Institutions; that penalty was reduced to one year by P.L. 1969, ch. 192, §1.

The state argues that, pursuant to §11-1-2, any offense punishable by more than one year imprisonment is a felony. This was also the law in 1962. Based upon this statute, the state asserts that we must uphold the decision of the District Court judge because a violation of §11-45-1 in 1962 clearly came within the statutory definition of a felony.

The petitioner, however, argues that our decision in *State* v. *Bussay*, 38 R.I. 454, 96 A. 337 (1916), settled the issue before us by holding that "lewd, wanton and lascivious" conduct was not an infamous offense requiring an indictment by a grand jury under Article I, §7 of the Constitution of the State of Rhode Island. The petitioner apparently contends that the terms "felony" and "infamous crime" are

synonymous; since §11-45-1 was not an infamous crime in 1962, it was therefore not a felony. He freely admits that our decision in *State* v. *Rezendes*, 105 R.I. 483, 253 A.2d 233 (1969), held that §11-45-1 was in fact an infamous crime, but he argues that we may not apply the *Rezendes* decision retroactively to his detriment.

An infamous crime at common law was any offense which affected a defendant's civil or political rights or the public administration of justice. Originally, the nature of the offense determined its infamy. *See State* v. *Rezendes*, *supra* at 486, 253 A.2d at 234; *State* v. *Bussay*, *supra* at 461-62, 96 A. at 339.

We abandoned that standard in *State* v. *Nolan*, 15 R.I. 529, 10 A. 481 (1887), and held that the penalty, not the nature of the offense, defined an infamous crime. In *State* v. *Nichols*, 27 R.I. 69, 60 A. 763 (1905), we held that infamous crimes were offenses

> "which at any given time may be punished by imprisonment in the state prison for a term of one year or more, and * * * crimes or offences punishable otherwise, as by fine only or by confinement elsewhere or for a shorter term than one year, are not 'infamous crimes,' within the purview of this section of the constitution." *Id.* at 83, 60 A. at 768.

We applied the *Nichols* decision in *State* v. *Bussay*, *supra*, where we held that in the predecessor statute to §11-45-1 the offense of being a "lewd, wanton or lascivious person in speech or behavior" did not constitute an infamous crime. In *Bussay*, we interpreted G.L. 1909, ch. 347, §25, which prohibited "lewd, wanton or lascivious" conduct, as requiring punishment to be served in the state workhouse and house of correction. Despite the fact that the term of imprisonment was six months to three years under the statute, no infamous offense was committed because the sentence was not to be served in the state prison. We

therefore held in *Bussay* that the defendant was not entitled to be indicted by a grand jury as required for infamous crimes by Article I, §7 of the Constitution of the State of Rhode Island.[2]

In *State* v. *Rezendes*, 105 R.I. 483, 253 A.2d 233 (1969), we reexamined the definition of "infamous crime" and announced that "[w]e no longer feel that the locus of a prisoner's detention has any bearing upon his entitlement to an indictment * * *. We hold that any crime punishable by more than a year's imprisonment is an infamous crime requiring an indictment." *State* v. *Rezendes, supra,* at 490, 253 A.2d at 236. With respect to §11-45-1, our decision mandated only that a defendant must be indicted by a grand jury before being tried for a violation of that statute because it provided for a maximum penalty of imprisonment for three years.[3]

Although we have observed that some jurisdictions hold all felonies to be infamous crimes, we have never held that the two terms were interchangeable. While Article XL of the amendments to the Rhode Island Constitution, which replaced Article I, §7, in 1973, now speaks in terms of felonies and not infamous crimes, an analysis of the two terms as they existed in 1962 when petitioner was convicted leads us to conclude that the terms were not synonymous.

In 1962, the definition of an infamous crime was that announced in *State* v. *Nichols, supra,* i.e., any offense

---

[2]Prior to being annulled in 1973, Article I, §7 of the Constitution of the State of Rhode Island stated:

> "No person shall be held to answer for a capital or other infamous crime unless on presentment or indictment by a grand jury, except in cases of impeachment, or of such offenses as are cognizable by a justice of the peace; or in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. No person shall, after an acquittal, be tried for the same offense."

[3]The Legislature swiftly amended §11-45-1 by reducing the maximum penalty to one year, thereby nullifying our decision in *Rezendes* and clearly making the offense a misdemeanor under §11-1-2. Section 11-45-1 was ultimately repealed by P.L. 1977, ch. 98.

punishable by one year or more in the state prison. However, G.L. 1956, §11-1-2 defined a felony as "any criminal offense which at any given time may be punished by imprisonment for a term of more than one year, or by a fine of more than five hundred dollars."

Our decision in this case, therefore, must rest upon our reading of §11-1-2 and the legislative history of §11-45-1.

We examined the early legislative history of §11-45-1 in the *Bussay* decision. Section 11-45-1 was originally enacted as P.L. 1869, ch. 814, §6. The penalty for a violation of that statute was a sentence of not less than six months nor more than three years in the state workhouse. The purpose of chapter 814 was to make the offenses included therein misdemeanors, punishable by a sentence to the state workhouse and house of correction. *State v. Bussay, supra,* at 458, 96 A. at 338.

Reference to the state workhouse was deleted from the statute in 1872 when it was reenacted as General Statutes 1872, ch. 232, §24. That same year the Legislature also enacted General Statutes 1872, ch. 236, §§36 and 37. Section 36 stated, in relevant part:

> "Unless otherwise provided, every person sentenced to imprisonment for a term of one year or more shall be imprisoned in the state prison * * * and every person sentenced for a less term than one year shall be imprisoned in the county jail * * * or in the state workhouse and house of correction * * *."

Chapter 232, §24, however, despite its maximum penalty of three years' imprisonment, was specifically excepted from this statute by General Statutes 1872, ch. 236, §37, which continued the locus of imprisonment in the state workhouse and house of correction.

This legislative scheme continued through the reenactment of 1909, upon which this court rested the *Bussay* decision. The fact that imprisonment was not to take place

in state prison was held to be determinative of the infamous crime issue.

It is apparent from this chronology that a legislative intention existed to treat "lewd, wanton and lascivious" conduct in a manner separate and apart from other serious offenses.

In 1941, the Legislature adopted P.L. 1941, ch. 983, §1, the predecessor statute to §11-1-2. Chapter 983 reflected a legislative decision to define felonies and misdemeanors by the duration and locus of imprisonment. It read:

> "Unless otherwise provided, any criminal offense which at any given time may be punished by imprisonment in the *state prison* for a term of more than one year, or by a fine of more than $500.00, is hereby declared to be a felony; and any criminal offense which may be otherwise punishable is hereby declared to be a misdemeanor." (Emphasis added.)

General Laws 1909, ch. 347, §25, had at this time been recodified as G.L. 1938, ch. 610, §24. The relevant language of the statute had remained substantially intact except that the locus of imprisonment had been changed from the state workhouse, which had been abolished by P.L. 1922, ch. 2230, §18, to the Providence County jail.[4] It is clear from the language quoted above that G.L. 1938, ch. 610, §24, was not a felony but a misdemeanor as it did not mandate imprisonment in state prison.

General Laws 1938, ch. 610, §24, was subsequently recodified in 1956 into its present section, §11-45-1. The penalty of six months to three years was retained; however, the locus of imprisonment was changed to the Adult Correctional Institutions. Concurrently, the definition of felony was amended by P.L. 1956, ch. 3721, §3, and recodified at G.L. 1956, §11-1-2. The amendment struck

---

[4]This amendment was adopted by P.L. 1932, ch. 1902, §1, following our decision in *In re Brown*, 51 R.I. 139, 152 A. 694 (1930).

from the statute the requirement that a felony be served in state prison. As amended, the definition of a felony included any offense punishable by imprisonment for more than one year or by a fine of more than $500. No further relevant amendments occurred until §11-45-1 was amended by P.L. 1969, ch. 192, §1, which reduced the maximum penalty to imprisonment for one year.

From this analysis, it is our opinion that §11-45-1 became a felony in 1956 pursuant to P.L. 1956, ch. 3721, §3. Section 11-45-1 remained a felony in 1962 when the petitioner was convicted and was thereafter reduced to a misdemeanor in 1969. The petitioner was therefore not convicted of a misdemeanor in 1962, and he is not now entitled to expunction of his identification records pursuant to §12-1-13.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the District Court with our decision endorsed thereon.

*Alfred A. Veltri,* for petitioner.

*Julius C. Michaelson,* Attorney General, *Alfred French Goldstein,* Special Assistant Attorney General, for respondent.