DELFINA REBELO *vs.* ANTONIA R. CARDOSO *et al.*

JUNE 16, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J.   This bill in equity was brought by the complainant Delfina Rebelo of the town of Cumberland against the respondents Antonia R. Cardoso and Jose R. Cardoso, both of the city of Central Falls, and Credit Union Central Falls, a corporation having a usual place of business in that city.   The bill seeks to establish that a one-half interest in two certain parcels of land in Central Falls, the first situated on the westerly side of Broad street and the second on Jenks avenue, is held in trust by Antonia R. and Jose R. Cardoso for the use and benefit of the complainant, and prays for an accounting of the rents, profits and income of said real estate.

The cause was previously heard in this court on an appeal by complainant from the entry of a decree in the su-

perior court sustaining respondents' demurrers. The appeal was sustained and the decree, so far as it sustained the demurrers and dismissed the bill of complaint, was reversed. See *Rebelo* v. *Cardoso*, 81 R. I. 360.

The complainant Delfina Rebelo died intestate on June 25, 1955 and on September 27, 1956 a decree was entered substituting John E. Rebelo, the administrator of her estate, as party complainant. On January 31, 1958 a decree was entered adding as party complainants John E. Rebelo in his individual capacity, Joseph Rebelo, Francis Rebelo and Celeste SanBento, being all the children and heirs-at-law of complainant.

Thereafter the cause was heard on bill, answers, replication and proof and a decree was entered granting the relief prayed for. From such decree an appeal was duly taken to this court by respondents Antonia R. and Jose R. Cardoso. Hereinafter they will sometimes be referred to as respondents.

It is alleged in the bill that on December 21, 1927 Maria S. Fernandes sold to complainant Delfina Rebelo and respondent Antonia R. Cardoso as tenants in common for $10,000 the above-mentioned parcels of land; that on December 29, 1928 Delfina and her husband and Antonia and her husband mortgaged the premises to Industrial Trust Company for $3,000; that respondents Cardoso occupied a portion of the premises by agreement with Delfina and her husband whereby said respondents undertook and promised to collect the rents and profits and to pay all bills including taxes, mortgage interest, water, fire insurance, etc., and to account to complainant; and that said respondents despite their agreement and without notice to complainant or her husband failed to pay the mortgage interest, whereupon the Industrial Trust Company advertised the premises and on May 16, 1935 sold the same to itself at public auction for $2,500.

It is further alleged in the bill that complainant's hus-

band died on May 19, 1935; that she had no knowledge of the foreclosure proceedings; that on June 10, 1935 Industrial Trust Company conveyed the premises to Antonio A. Andrade, who gave a mortgage to Industrial Trust Company for $3,400; and that complainant was informed by Andrade that he was acting for respondents Cardoso who were the real purchasers.

It is also alleged that on June 27, 1935 complainant filed her bill of complaint against Antonia Cardoza, Joseph Cardoza and Antonio A. Andrade, which cause is on file in the superior court as Equity No. 13349 and was heard by a justice thereof; that no final decree was entered; that on October 6, 1949 a stipulation signed by counsel of record was filed; that the jacket entry for that date reads, "Discontinued. No costs"; and that on June 21, 1950 a stipulation was filed, signed by the justice who heard the case, reading, "the record of Dec. 11, 1935 is amended by adding words, 'and decision for respondent.' "

It is further alleged that by quitclaim deed dated February 5, 1941 Antonio A. Andrade conveyed the property to respondent Antonia R. Cardoso, also known as Antonia Nunes Cardoso, and that the deed contained the notation, "The consideration for this deed is such that no revenue stamps are required."

The bill also alleged that in the early summer of 1950 complainant was interviewed by an attorney for a bank who wanted her "to sign off"; that she refused to do so; that later another attorney offered her $100 to sign a deed; that she again refused; that on July 12, 1950 respondent Antonia R. Cardoso mortgaged the premises to Credit Union Central Falls for $23,000; and that because of the offers made to her complainant consulted counsel and learned of the quitclaim deed dated February 5, 1941 given by Andrade to respondent Antonia R. Cardoso.

It appears from the testimony that on December 21, 1927 the premises in question were conveyed to Delfina Rebelo

and Antonia R. Cardoso by Maria S. Fernandes; that the property consisted of a store with a back room and a small cottage in the rear; and that while such property was purchased by Rebelo and Cardoso, who were in partnership, the deed was taken in the names of their wives.

The attorney for complainant testified that he was first consulted by her on January 19, 1952; that she saw him several times thereafter; that she said the Cardosos occupied a portion of the property under an agreement whereby they promised to collect the rents and pay all the bills including taxes, mortgage interest and repairs; that she had no knowledge of the start of foreclosure proceedings; that she was not informed thereof until after the sale and her husband's death; that when she learned Andrade had bought the premises, she went to him and was told by him that he was acting for the Cardosos; and that they were the real purchasers.

Stephen A. Fanning testified that prior to October 1951 he was a practicing attorney and town clerk of the town of Cumberland; that at some time prior to the date mentioned a woman and her daughter came to his office to assist him in straightening out a title; and that he offered the mother $100 for a quitclaim deed which she refused.

John Pereira, a cousin of complainant, testified that the latter told him she knew nothing of the foreclosure until a friend informed her of it; that she at once tried to get in touch with Cardoso but was unable to find him; that later she went to the Andrade home and Mrs. Andrade said the property was theirs in name only and that they did not own it; and that sometime afterward she saw Mr. Andrade who said the property was his. He also stated that he was with Mrs. Rebelo in the courtroom when the first case was being tried; and that when Andrade was coming out Mrs. Rebelo asked him why he lied and could say that the house belonged to him, to which he replied that he had to protect his own money.

The respondent husband testified that he was living in a three-tenement house with a little store in front; that this was the original location of the property concerning which they were having trouble; that originally he and complainant's husband bought the property for $12,500; that there was a store on Broad street with a back room and in the rear of that was a one-family house; that he occupied the house in the rear and was to pay $5 a week for rent; that both he and Rebelo paid the mortgage interest at first to Albert Fernandes; that later they paid the interest to Industrial Trust Company from the profits of the partnership business; that after the partnership broke up they began to get behind in their bills; that they rented to a barber; that the barber said Rebelo owed him money and he stopped paying some of the rent and credited it to Rebelo; that Rebelo said he did not care for the property any more; and that he got behind in the mortgage interest and taxes because Rebelo did not help any more.

Cardoso testified further that he received a notice from the bank that it was going to foreclose and he so informed Rebelo; that the latter was not present at the foreclosure but Cardoso saw him the same day and told him about it; that he had nothing to do with Andrade buying it; that he learned of the sale about two weeks after Andrade bought it; and that he remained on the property and paid $5 a week rent to Andrade and took care of the property. Cardoso also testified that later he sent for $900 from the "old country" and used that with some money he had to buy the property from Andrade for around $3,000; that there was a fire; and that thereafter he spent $29,000 in rebuilding the property.

Andrade testified that he bought the property because he thought he could use it for his own business; that he sold it to Cardoso for the same amount it cost him; that there was no profit at all; and that Cardoso gave him either $800 or $900 in cash.

160

The complainant contends that there was an agreement with Cardoso that he was to make the payments on the mortgage and pay the taxes; that through his neglect to make the required payments and his failure to inform her or her husband that the bank was threatening to foreclose, Cardoso was guilty of fraud toward her, a co-tenant; that later through an agent, in this case Andrade, Cardoso finally obtained title to the property in his own name; and that because of the initial fraud it should be held that Cardoso was holding one undivided half of the real estate in trust for her.

The evidence bearing on the alleged agreement and the relation existing between Cardoso and Andrade is sharply conflicting. The trial justice saw and heard the witnesses and concluded that there was an agreement between Rebelo and Cardoso, who were partners in business, whereby Cardoso was to pay the taxes and interest on the mortgage from the rents and income of the business. He also found in effect that Cardoso through negligence or design had failed to pay such taxes and interest and had allowed the mortgagee to foreclose, and that the circumstances under which the Cardosos obtained title to the property were fraudulent and caused them to be trustees to the extent of one undivided half of the property in favor of the former co-tenant Delfina Rebelo.

The respondents Cardoso deny any negligence or design in their failure to pay municipal taxes and mortgage interest and assert a lack of money, for which they were not responsible, as a reason for such failure of payments as occurred. They also strongly urged in this court certain reasons why complainant should not prevail. They contend that only a showing of fraud or inequitable conduct would justify the court in holding the Cardosos as constructive trustees for the benefit of complainant and that such conduct has not been shown. To support their contentions they cite *Starkweather* v. *Jenner,* 216 U. S. 524. In that

case the court stated at page 528, "That there is such a community of interest between those who hold a common title as to forbid one such co-tenant from acquiring any benefit from the acquisition of an outstanding superior title, is undeniable. That a court of equity upon timely application will convert such a purchasing tenant into a trustee for the common benefit, is true." While there the court found no fraud, the law as stated supports complainant's contention in the instant case.

The respondents assert that there was no offer of contributions on the part of complainant. None was alleged and there appear to be no facts which would call for contribution by her. The respondents cite *Breitman* v. *Jaehnal,* 99 N.J.Eq. 243. In that case, after stating at page 245 that a co-tenant occupies a confidential relation to his co-tenants, the court held that "if a co-tenant in possession of common property purchases that property, either directly or indirectly, at a sale under foreclosure or a mortgage or deed of trust, the purchase will be deemed to have been made for the benefit of all of the co-tenants; provided, however, the other co-tenants elect within a reasonable time so to consider the purchase and offer to contribute their respective proportions of the purchase price." Considering the circumstances which appear in the case at bar it is not apparent that any contribution is required from complainant, but if upon an accounting she is found to owe anything to her co-tenant the matter can be adjusted at that time.

The respondents contend that many of the issues decided by the trial justice are res judicata, having been decided in the earlier case, citing *Almy* v. *Daniels,* 15 R. I. 312, and *Mills* v. *Allen,* 26 R. I. 177. We cannot agree with their contention that in a given case all matters in issue which have been heard, considered and decided are res judicata. In an equity cause such as the one here the court's decision must be embodied in a decree. In *Almy* v. *Daniels, supra,*

162

an issue therein was decided in the earlier case of *Almy* v. *Daniels*, 11 R. I. 250, and so was held to be res judicata, but in the earlier case the issue was not only decided but the case was ended by dismissal. In *Mills* v. *Allen, supra,* the action was assumpsit on a promissory note. The earlier case was a bill in equity in which the entire matter was referred to a referee with the stipulation that his finding should be final, "with the same effect as a final hearing before the court and final decree thereon." It was upon the stipulation that res judicata was found to exist.

In *De Wolf* v. *A. & W. Sprague Mfg. Co.,* 12 R. I. 133, the court, in speaking of the discontinuance of an action, stated at page 134, "It decides nothing; it simply remits the parties to the *status quo ante litem."* See also *Rebelo* v. *Cardoso,* 81 R. I. 360.

In *Green* v. *Edwards,* 31 R. I. 1, at page 33, Mr. Justice Sweetland in a concurring opinion pointed out that to support the plea of res judicata a judgment, decree, or final order should have been actually rendered and entered in the prior action or suit. Therefore we are of the opinion that it cannot be said that any of the issues in the instant case was finally determined in Equity No. 13349, inasmuch as no final decree was ever entered in that case and it was discontinued by agreement of counsel and with the consent of the court.

The respondents strongly stress their contention that complainant was guilty of laches. Such contention is not sustained by the facts. The foreclosure was on May 16, 1935 and on June 10 the Industrial Trust Company conveyed the property to Andrade. On June 27, 1935 the prior case was filed and was heard in December of that year. At the conclusion thereof complainant had every reason to believe that she had lost the case. On March 6, 1941 the deed from Andrade to Cardoso was recorded. The complainant was ignorant of this fact and she had no reason to search

the record. To her the recording of this deed was not notice.

In *Faulkenburg* v. *Windorf*, 194 Minn. 154, it is stated at page 159, "It is inaccurate to say that the record of a deed is constructive notice to all the world. What is meant is only that the record is open to all. The record of a deed is not constructive notice to those whose titles accrued before its recording. It is only so as to subsequent purchasers who are bound to search the record. * * * The record does not cut off earlier interests by arbitrarily charging them with notice."

In *Maul* v. *Rider*, 59 Pa. 167, the court stated at page 171, "It is sometimes said that the record of a deed is constructive notice to all the world. That, it is evident, is too broad and unqualified an enunciation of the doctrine. It is constructive notice only to those who are bound to search for it: thus subsequent purchasers and mortgagees, and perhaps all others who deal with or on the credit of the title, in the line of which the recorded deed belongs. But strangers to the title are in no way affected by it."

The first inkling that complainant had of a possibility that she still had an interest in the property was when she was offered $100 by an attorney for a quitclaim deed. It is not clear when this was, but it would seem to have been in the latter part of 1950 or in 1951. It would appear that complainant acted with reasonable promptness after receiving the above offer. She consulted an attorney on January 19, 1952 and the present suit was brought on February 8 of that year. Laches is not concerned alone with time as such but with changes that time brings. *Chase* v. *Chase*, 20 R. I. 202. In the instant case it would appear that complainant rather than respondents has suffered through passage of time.

The trial justice wrote a careful and detailed rescript and reached the conclusion that on the evidence and in all the circumstances complainant was not guilty of laches and was

entitled to relief. We have read the testimony and considered the questions arising therefrom and we cannot say that he was clearly wrong. *Kerr* v. *McKenna,* 57 R. I. 252; *Robinson* v. *Robinson,* 66 R. I. 321; *Parness* v. *Weiner,* 77 R. I. 289.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Corcoran, Foley & Flynn, Francis R. Foley,* for complainant.

*Thomas F. Vance, Jr., John A. O'Neill,* for respondents.