397 A.2d 889.

## Henri Berthiaume *et al vs.* School Committee of the City of Woonsocket.

### FEBRUARY 8, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

244

DORIS, J.   This matter is before us on a petition for certiorari from a decision of the Board of Regents for Education denying the request of the petitioners for additional compensation. Our resolution of this case of first impression depends upon the construction we give to certain statutory provisions.

Each of petitioners was employed as a per diem substitute teacher within the Woonsocket School Department in excess of 135 days in one or more of the 1972-73, 1973-74, and 1974-75 school years. During the years in question each of petitioners was compensated at the prevailing rate of $22 per day for the days on which they were employed. This rate of pay was less than the lowest step level on the regular-teacher salary schedules adopted in the respective school years by the school committee. Although the contract between the Woonsocket School Committee and the Woonsocket Teachers' Guild expressly excludes per diem substitute teachers from its coverage, petitioners claim that by virtue of G.L. 1956 (1969 Reenactment) §16-7-29, they are nevertheless entitled to compensation according to the prevailing salary schedule as outlined in that contract.

In February 1976, petitioners received a hearing on their request before the School Committee. After the committee denied the request for additional compensation, an appeal was

taken to the commissioner of education. The commissioner agreed with petitioners' statutorily based argument and ordered the school committee to pay petitioners according to the contract salary schedules. On subsequent appeal to the Board of Regents, however, that body reversed the commissioner's decision by holding that G.L. 1956 (1968 Reenactment) §§28-9.3-1 to 16, the School Teachers' Arbitration Act, had by implication repealed §16-7-29.

The petitioners' argument is primarily predicated upon §16-7-29 which requires each community to establish

"a salary schedule recognizing years of service, experience, and training, beginning at a minimum of not less than four thousand dollars ($4,000) and rising to a maximum of at least six thousand dollars ($6,000) for *all certified personnel regularly employed* in the public schools and having no more than twelve (12) annual steps, with no annual step providing an increase of more than three hundred dollars ($300)." (Emphasis added.)

They maintain that because they are "certified personnel regularly employed," per diem substitute teachers are entitled to be paid according to the established salary schedule rather than at the separately agreed upon $22 daily rate.

The school committee argues initially that per diem substitutes are not "regularly employed certified personnel" and therefore are not entitled to the benefits of the statute. Section 16-7-16 purports to define for purposes of *inter alia* §16-7-29, the terms "certified personnel" and "regularly employed." That petitioners are "certified personnel" is beyond dispute. *See* §16-7-16(g). Whether they are "regularly employed" is, however, a matter not so easily resolved. Section 16-7-16(h) expressly incorporates by reference the definitions of "regularly employed" and "service" found in G.L. 1956, chapter 16 or title 16, a provision concerning retirement benefits for teachers. Unfortunately, that chapter does not directly define "regularly employed." The only use of that term is contained in §16-16-1(2) which reads:

" 'Teacher' shall mean a person required to hold a certificate of qualification issued by or under the authority of the board of education and *who is engaged in teaching as his principal occupation and is regularly employed* as a teacher in the public schools of any city or town in the state, or any formalized, commissioner approved, cooperative service arrangement. *Said term shall include* a person employed as a teacher, supervisor, principal, assistant principal, superintendent, or assistant superintendent of schools, director, assistant director, co-ordinator, consultant, dean, assistant dean, educational administrator, nurse teacher and attendance officer or any person who has worked in the field of education or is working in the field of education that holds a teaching or administrative certificate *and any substitute teacher who serves during a school year at least three-quarters (3/4) of the number of days that the public schools are required by law to be in session during such year.*" (Emphasis added.)

The petitioners urge us to construe this statute to mean that any substitute teacher who has worked at least three-quarters of the number of days that a public school is legally required to be in session is "regularly employed." Because a public school must be in session for at least 180 days under the provisions of §16-2-2, petitioners contend that any substitute teacher who has taught for more than 135 days during a school year comes within the mandate of §16-7-29. The school committee counters that while substitutes may be "teachers" by virtue of the above definition, they are not "regularly employed." That term is reserved, they argue, for full-time 180-day teachers.

Our construction of statutory language is guided by the proposition that the intent of the Legislature controls. That intent is discovered from an examination of the language, nature, and object of the statute. *Nolan* v. *Representative Council,* 73 R.I. 498, 502, 57 A.2d 730, 732 (1948). Furthermore, we adhere to the canon that statutes should not be construed to achieve meaningless or absurd results. *See In*

re Crepeau-Cross, 120 R.I. 67, 71, 385 A.2d 658, 660 (1978); *State* v. *Sprague,* 113 R.I. 351, 355, 322 A.2d 36, 38 (1974). With these principles in mind we believe that a fair reading of the statute leads to the conclusion that the Legislature intended substitute teachers such as petitioners to be considered "regularly employed." Were we to accept the school committee's contention that only full-time teachers are "regularly employed," the Legislature's inclusion of substitute teachers in §16-16-1(2) and that section's express incorporation into §16-7-29 would be rendered a nullity. Under that interpretation substitutes could never be considered "regularly employed." The principle of *noscitur a sociis,* that the meaning of one word can become clear by reference to other words associated with it in the statute, lends further support to our construction of "regularly employed." Section 16-16-5 directs that in calculating years of service for purposes of retirement benefits, a substitute teacher who has served for three-quarters of a school year be given credit for a year of service. Because §16-7-16(h) incorporates both this definition and the aforementioned definition of "regularly employed" into §16-7-29, we believe the sounder view is that the Legislature must have intended that petitioners be considered regularly employed. *Cf. McSherry* v. *City of St. Paul,* 202 Minn. 102, 108-10, 277 N.W. 541, 544-45 (1938).

Although the Board of Regents agreed that petitioners were "regularly employed," they denied petitioners' request for additional compensation on the ground that the School Teachers' Arbitration Act, §§28-9.3-1 to 16, had by implication repealed §16-7-29. It is well settled that repeals by implication are not favored by law. When the repealing effect of a statute is doubtful, the statute will be strictly construed to effectuate its consistent operation with previous legislation. *See, e.g. Providence Electric Co.* v. *Donatelli Building Co.,* 116 R.I. 340, 344, 356 A.2d 483, 486 (1976); Sutherland, *Statutes and Statutory Construction* §23.10, at 230-31 (C. Sands 4th ed. 1972). Only when the two statutory provisions are irreconcilably repugnant will a repeal be

implied and the last-enacted statute be preferred. *See Providence Electric Co.* v. *Donatelli Building Co., supra,* at 344, 356 A.2d at 486; *Surber* v. *Pearce,* 97 R.I. 40, 44, 195 A.2d 541, 543 (1963); *Opinion to the Governor,* 78 R.I. 144, 149-50, 80 A.2d 165, 168 (1951). We have also stated that if two statutes are found not to be inconsistent with one another and relate to the same subject matter, they are deemed "in *pari materia* and should be considered together so that they will harmonize with each other and be consistent with their general object and scope, even though they contain no reference to one another and were passed at different times." *Providence Teachers' Union, Local 958* v. *School Committee,* 108 R.I. 444, 449, 276 A.2d 762, 765 (1971).

Clearly, both of these statutes generally cover the same subject matter. Section 28-9.3-2 grants certified teaching personnel the right to bargain collectively "concerning hours, *salary,* working conditions and all other terms and conditions of professional employment." *Id.* (emphasis added.) Section 16-7-29 mandates the establishment of a minimum salary schedule for all certified personnel regularly employed in the public schools. By enacting the School Teachers' Arbitration Act it is apparent that the Legislature intended to provide one means whereby the statutorily mandated salary schedule could be established. Clearly the Legislature did not intend the $4,000 minimum as the actual floor of the salary schedule adopted by each community. Rather, each community is free to adopt its own schedule as long as the lowest salary level does not fall below the $4,000 minimum. *Cf. Board of Education* v. *Nyquist,* 60 Misc.2d 967, 970, 304 N.Y.S.2d 441, 445-46 (Sup.Ct. 1969). In fact, we noted in *School Committee* v. *Westerly Teachers' Association,* 111 R.I. 96, 100 n.1, 299 A.2d 441, 443 n.1 (1973), much of the reason why many teachers are paid far in excess of the $4,000 minimum can be attributed to the collective bargaining procedures authorized by the School Teachers' Arbitration Act. Additionally, we recognize that many of the individuals covered by §16-7-29 are expressly excluded from coverage under the School Teachers' Arbitration Act. *Compare*

§16-16-1(2) *with* §28-9.3-1. We do not believe that the Legislature intended these individuals to be without any statutory protection. Accordingly, we conclude that §16-7-29 retains viability notwithstanding the subsequent enactment of the School Teachers' Arbitration Act.[1]

The school committee further argues that even if §16-7-29 has not been repealed by implication, petitioners should be barred from relief because of laches or their waiver of any right to be paid pursuant to the salary schedule by agreeing to employment at the per diem rate. We disagree.

We have stated on repeated occasions that the equitable defense of laches comprehends not mere delay but delay that works a prejudicial disadvantage to another. *See, e.g., Pukas v. Pukas,* 104 R.I. 542, 545-46, 247 A.2d 427, 429 (1968); *Arcand v. Haley,* 95 R.I. 357, 364, 187 A.2d 142, 146 (1963); *Nelson v. Dodge,* 76 R.I. 1, 14, 68 A.2d 51, 58 (1949). The mere passage of time is insufficient to invoke the defense of laches; what is crucial are the changes brought about by the passage of time. *See Rebelo v. Cardoso,* 91 R.I. 153, 163, 161 A.2d 806, 811 (1960). It is undeniable that if petitioners prevail, the school committee will be forced to make unexpected expenditures. There is no indication, however, that these expenditures would have been lessened had petitioners more promptly sought the requested additional compensation.

It is generally recognized that when a statute creates a private right for the public good, the donee of that private right lacks the power either to waive that right or to nullify it by private contract. *See, e.g. School District v. Teachers' Retirement Fund Association,* 163 Or. 103, 108, 95 P.2d 720,

---

[1] In their decision the Board of Regents for Education placed great weight upon the undisputed fact that many teachers' contracts ignore the $300 step increase limitation contained in §16-7-29. As the petitioners correctly indicate, the step increase limitation is not at issue in this case. Were it properly before us, we might well agree with the petitioners that if the School Teachers' Arbitration Act has repealed any portion of §16-7-29 by implication, it is only this limitation upon the amount of step increases.

722 (1939). Section 16-7-16 indicates that §16-7-29 was enacted in order to "provide a quality education for all Rhode Island youth * * *," clearly a public purpose. Therefore, petitioners' acceptance of the per diem rate could not have effectively operated as a waiver of their right to the compensation statutorily established. The case of *Malcolm* v. *Yakima County Consolidated School District*, 23 Wash.2d 80, 159 P.2d 394 (1945) is particularly relevant. In that case a schoolteacher agreed to be paid at a monthly rate substantially less than the minimum salary mandated by statute. The Supreme Court of Washington held,

> "an agreement by an employee of a municipal corporation to accept a wage or salary less than that provided for by law, is void as against public policy * * * such employee is not estopped to maintain an action for the balance of the salary which he agreed to remit." *Id.* at 83, 159 P.2d at 395-96.

*See Allen* v. *City of Lawrence*, 318 Mass. 210, 213, 61 N.E.2d 133, 135 (1945); *Clark* v. *State*, 142 N.Y. 101, 105-06, 36 N.E. 817, 818 (1894); *Cottrell* v. *Board of Education*, 181 Misc. 645, 646, 42 N.Y.S.2d 472, 475 (Sup. Ct. 1943). *See generally*, Annot., *Public Officers – Compensation*, 160 A.L.R. 490 (1946).

Having concluded that petitioners come within the purview of §16-7-29, we must now determine exactly what compensation is mandated by that statute. There are several possible interpretations. Arguably, because petitioners are relying upon §16-7-29, they are only entitled to the statutorily prescribed minimum daily rate of 1/180th of $4,000, or $22.22 per day. As we have previously stated, the emphasis of §16-7-29 is the establishment of a salary schedule that recognizes years of service, experience, and training, rather than the $4,000 minimum. A flat daily rate of $22.22 fails to take into account those factors enumerated in the statute.

The school committee contends that petitioners were in fact compensated in a manner that reflects years of service, experience, and training. They state that as a matter of

practice if a teacher has substituted in one class for thirty consecutive days, because, for example, the regular teacher is ill, on the thirty-first day the substitute is placed on the step salary schedule based upon prior service. They further note that if a teacher has substituted for more than 135 days in a given school year and is appointed to full-time status for the following year, that teacher is given credit on the salary schedule for that year. While these practices are commendable, we do not believe that they satisfy the statutory requirement. Substitute teachers who teach for more than 135 days during a school year are "regularly employed" and entitled to be paid a salary that recognizes their "years of service, training, and experience" even if they do not teach for more than thirty days in one class and are not employed on a full-time basis the following year.

Clearly, the school committee can create a separate salary schedule for those substitutes who have worked more than 135 days in a given school year as long as that schedule takes into account years of service, training, and experience. We perceive nothing in §16-7-29 that mandates equal payment for substitute and regular teachers. "Experience" as a substitute teacher is a factor that can be reflected in the salary schedule. In this case, however, no salary schedule was ever adopted by the school committee. All substitute teachers, whether they worked one day or 180 days, were paid at the exact same rate. The only salary schedule existent that recognizes years of service, training, and experience is the one contained in the union contract; and petitioners are entitled to compensation according to that schedule.

We do not agree, however, with petitioners' claim that they are entitled to be paid according to the salary schedule retroactively from their first day of work. Rather, we hold that petitioners are entitled to the salary schedule rate of compensation only for those days taught after the 135th day of employment. This holding is supported by both statutory and practical considerations. When the Legislature included petitioners within the definition of "regularly employed," they certainly did not mean to imply that a teacher retro-

actively becomes a better teacher on the first day of his career after having taught 135 days. Such a result would render meaningless the concept of "years of service." The statute itself makes this apparent. Section 16-7-16(h) states that "service" shall have the same meaning for §16-7-29 as defined in G.L. 1956, chapter 16 of title 16. Section 16-16-5 states:

> "Any permanent or long term substitute teacher who serves or has served during a school year at least three-quarters of the number of days that the public schools are required by law to be in session during such year shall be given credit for a year of service for such year."

Thus, once a substitute teacher has taught 135 days he or she is credited with a year of service, and the salary schedule required by §16-7-29 must take into account that year of service. A fair reading of this provision does not, however, require retroactive recognition of that year of service. Furthermore, we are cognizant that a substitute teacher may reach the 135-day standard while serving in several different school systems. For example, a teacher could hypothetically substitute for nine days in each of fifteen school systems. On his 136th day of service his salary from then on must reflect that he has achieved a year of service. To require, however, each of his fifteen prior employers to compensate him retroactively at a higher rate would create an unfair administrative nightmare that the Legislature could never have intended. Accordingly, the petitioners are entitled to be compensated according to the salary schedule contained in the union contract only for those days worked after the first 135 days.

The petition for certiorari is granted, the decision of the Board of Regents for Education is quashed, and the papers are ordered returned to the board with our decision duly endorsed thereon.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Lynette Labinger,* for petitioner.

*Richard R. Ackerman, Inc.,* for respondent.