DECISION
This matter is before the Court on the appeal of Shore Line Realty Co., Inc. Shore Line seeks to vacate a Declaratory Ruling of the Department of Business Regulation ("DBR"). The department regulates year-round mobile home parks, pursuant to chapter 31-44 of the Rhode Island General Laws. The Declaratory Ruling of DBR found that the department was also empowered to regulate seasonally operated mobile and manufactured home parks pursuant to the same statute.
 I. FACTS AND TRAVEL
Shore Line owns and operates Wakamo Park in South Kingstown, which rent spaces upon which residents install mobile homes and removable cottages. Leases run only from April 15 to October 15 of each year, that is, the homes are not permanently *Page 2 
affixed to the sites. The residents of the park have organized the Wakamo Park Homeowners Association. Several members of the association, residents of the park, wrote to DBR in 2008 and 2009 expressing their concern regarding the Department's failure to actively improve the property.
On May 7, 2009 the association filed a Petition for Declaratory Ruling with DBR seeking an order "declaring Wakamo Park to be subject to the requirements of 31-44-1 et seq and 31-44.1-1 et seq", and subject to the jurisdiction of DBR. Shore Line was not served with the petition. On July 2, 2009 the director of DBR appointed a hearing officer and scheduled a hearing for July 23. DB's order and notice of the July 2 notice was sent to Shore Line at an incorrect address. At the July 23 hearing, the hearing officer expressed concern about the owner's failure to attend, and entered an order allowing all interested parties to brief the issue and ordering the record will "be kept open through September 15, 2009." (DBR order of July 24, 2009). Shortly thereafter, the residents noticed that an incorrect address was being used for the owner, and the July 24 order was mailed to the correct address.
On August 18, 2009, an attorney for Shore Line appeared in the DBR case. Shore Line immediately moved to dismiss and to continue the matter as it had received no advance notice of the hearing, the petition failed to join an indispensable party and failed to state a claim.[1] In a letter dated August 31, the hearing officer extended the deadline for briefs for another 30 days, and allowed either party to request an additional hearing. The owner submitted an answer and a memorandum in October, but did not request a hearing. *Page 3 
The Decision of DBR was issued on May 18, 2010, concluding that the statute is interpreted to allow the department to regulate seasonal mobile and manufacture home sites. Shore Line timely filed this appeal.
 II. THE STATUTORY FRAMEWORK
The Rhode Island Administrative Procedures Act provides for declaratory rulings by administrative agencies:
 § 42-35-8. Declaratory rulings by agencies. — Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision or of any rule or order of the agency. Rulings disposing of petitions have the same status as agency orders in contested cases.
Pursuant to this statute, the departments establish administrative rules or regulations setting forth the procedures for obtaining declaratory rulings. No party cited those department regulations extensively nor did anyone append them to the record herein.
 III. THE STANDARD FOR REVIEW
An appeal from an administrative agency is described in another statute, which sets forth the statutory standard for review:
 § 42-35-15. Judicial review of contested cases. — (a) Any person, including any small business, who has exhausted all administrative remedies available to him or her within the *Page 4 
agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter. . . .
 (b) Proceedings for review are instituted by filing a complaint in the superior court . . .
 (c) . . .
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 IV. ANALYSIS A. Statutory Interpretation
Shore Line first suggests that the Department misconstrued the statute to provide for regulation of seasonal communities.
The Petition for Declaratory Ruling sought an order "declaring Wakamo Park to be subject to the requirements of 31-44-1 et seq." (May 5, 2009 petition, page 3). *Page 5 
Chapter 31-44 of the General Laws authorizes DBR to regulate mobile and manufactured homes, issue licenses for the homes, and imposes certain statutory regulations on them.[2]
Several definitions in the chapter provide significant guidance in determining which homes are subject to regulation:
 § 31-44-1. Definitions. — As used in this chapter:
 (1) . . .
 (8) "Mobile and manufactured home" means a detached residential unit designed:
 (i) For a long term occupancy and containing sleeping accommodations, a flush toilet, and a tub or shower bath and kitchen facilities, and having both permanent plumbing and electrical connections for attachment to outside systems;
 (ii) To be transported on its own wheels or on a flatbed or other trailer or detachable wheels; and
 (iii) To be placed on pads, piers, or tied down, at the site where it is to be occupied as a residence complete and ready for occupancy, except for minor and incidental unpacking and assembly operations and connection to utilities systems.
 (9) "Mobile and manufactured home park" or "park" means a plot of ground upon which four (4) or more mobile and manufactured homes, occupied for residential purposes are located.
The department construed this language of the statute to include seasonal occupants and seasonal units. *Page 6 
In order to interpret a statute, this Court and the department are similarly bound by established Rhode Island law:
 When we construe a statute or an ordinance, "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." D'Amico, 866 A.2d at 1224 (quoting Webster, 774 A.2d at 75). We must "determin[e] and effectuat[e] that legislative intent and attribut[e] to the enactment the most consistent meaning." In re Almeida, 611 A.2d 1375, 1382 (R.I. 1992). "That intent is discovered from an examination of the language, nature, and object of the statute." Berthiaume v. School Committee of Woonsocket, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996). "This is particularly true where the Legislature has not defined or qualified the words used within the statute." D'Amico, 866 A.2d at 1224 (quoting Markham v. Allstate Insurance Co., 116 R.I. 152, 156, 352 A.2d 651, 654 (1976)). In giving words their plain-meaning, however, we note that this "approach is not the equivalent of myopic literalism." In re Brown, 903 A.2d 147, 150 (R.I. 2006). "When we determine the true import of statutory language, it is entirely proper for us to look to `the sense and meaning fairly deducible from the context.'" Id. (quoting In re Estate of Roche, 16 N.J. 579, 109 A.2d 655, 659 (1954)). As we previously have held, it would be "foolish and myopic literalism to focus narrowly on" one statutory section without regard for the broader context. In re Brown, 903 A.2d at 150.
 Thus, in interpreting a statute or ordinance, we first accept the principle that "statutes should not be construed to achieve meaningless or absurd results." Berthiaume, 121 R.I. at 247, 397 A.2d at 892. "[W]e [then] consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994); accord Bailey v. American Stores, Inc./Star Market, 610 A.2d 117, 119 (R.I. 1992); Stone v. Goulet, 522 A.2d 216, *Page 7 
218 (R.I. 1987). Ryan v. City of Providence, 11 A.3d 68, 70-1 (2011)
Accordingly, the Court first considers the plain language of the statute. It is noteworthy that the legislature specifically intended to define a mobile and manufactured home, for purposes of this statute. R.I. Gen. Law § 31-44-1(8) not only defines that home as a detached residential unit, but sets forth several conditions. The unit must be designed for long term occupancy, with sleeping accommodations, plumbing and electrical connections. It must also be designed to be transported on wheels and situated on pads. It is a very comprehensive, explicit list of conditions, clearly enumerated in specific detail.
Shore Line contends that the statute was designed to regulate affordable, year round residences (Plaintiff's Brief, Page 8), but none of these requirements is contained in the plain language of the statute. The statutory definition, in itself is clear and unambiguous and can be literally interpreted. In short, there is no need to read more or less into the statute. The General Assembly attempted to set forth a clear definition and did so. The Court cannot presume that the legislature intended to limit the definition to year round residences or to affordable housing, as those terms are not included in the statutory chapter.[3] *Page 8 
Construing the statute so as to include seasonal sites, does not render any other part of the statute to be "meaningless or absurd".Ryan, p. 72. It is an appropriate and rational interpretation of the act as a whole.
Moreover, the Rhode Island Department of Business Regulation, from who the ruling is appealed, is empowered to administer the regulations, pursuant to the same chapter, R.I.G.L. ch. 31-44. As such it is afforded some deference in its interpretation of the statutes. This Court must:
 recognize the "well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency * * * even when the agency's interpretation is not the only permissible interpretation that could be applied." Pawtucket Power Associates Limited Partnership v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993); see Unistrut Corp. v. State Department of Labor and Training, 922 A.2d 93, 99 (R.I. 2007) ("[W]hen the administration of a statute has been entrusted to a governmental agency, deference is due to that agency's interpretation of an ambiguous statute unless such interpretation is clearly erroneous or unauthorized."); Gallison v. Bristol School Committee, 493 A.2d 164, 166 (R.I. 1985) ("[W]here the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized."); see also Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 344-45 (R.I. 2004); In re Lallo, 768 A.2d 921, 926 (R.I. 2001). *Page 9 
 The hearing justice's review of DBR's interpretation of § 27-29-4.4 should have been limited to determining whether such interpretation was "clearly erroneous or unauthorized." See Gallison, 493 A.2d at 166; see also Labor Ready Northeast, Inc., 849 A.2d at 344-45; In re Lallo, 768 A.2d at 926. Auto Body Association of Rhode Island v. State Department of Business Regulation, 996 A.2d 91, 97-98 (R.I. 2010)
It was reasonable for DBR to consider the statute as clear and unambiguous. DBR reasonably interpreted the statute, and the Court could reasonably defer to a department's interpretation, particularly when that determination results from a contested case where there was an opportunity for hearing. In this instance, the department was specifically empowered to construe the regulatory framework by the Administrative Procedures Act.
 B. Sufficiency of the Evidence Below
The Appellant contends that the hearing officer failed to base his Decision on legally competent evidence. (Appellant's brief, page 18).
The Decision referenced only three findings of fact, Decision, page 15. Charles Cummisky, the manager of Appellant's Shore Line Realty Co., Inc. submitted a September 28, 2009 affidavit which referenced most of the identical facts. Indeed, this Court knows of no facts in dispute, though the parties clearly disagree on their interpretation of the law.
The statutes afford deference to the hearing officer in procedurally conducting an administrative hearing. *Page 10 
The Rhode Island Administrative Procedures Act states:
 § 42-35-10. Rules of evidence — Official notice. — In contested cases:
 (1) Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the superior courts of this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men and women in the conduct of their affairs. Agencies shall give effect to the rules of privilege recognized by law. Objections to evidentiary offers may be made and shall be noted in the record. Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form;
 (2) Documentary evidence may be received in the form of copies or excerpts, if the original is not readily available. Upon request, parties shall be given an opportunity to compare the copy with the original;
 (3) . . . Gen. Laws 1956, § 42-35-10, emphasis added.
The Mobile Homes law provides the same latitude for the hearing procedure:
 § 31-44-17. Filing of complaint with department — Notice — Rules of evidence not binding. — (a). . . .
 (c) The director or his or her agent shall not be bound by common law or statutory rules of evidence but may admit all testimony having a reasonable probative value. Complaints filed shall be handled in accordance with the departments' rules of practice and the Administrative Procedures Act, chapter 35 of Title 42. It may exclude evidence which, in the opinion of the director or his or her agent, is immaterial, irrelevant, or unduly repetitious.
 Gen. Laws 1956, § 31-44-17
As the issues were never really in dispute, an both parties agree that the park is operated on a seasonal basis, the department relied on appropriate evidence in reaching its decision. The proceeding below requested a declaratory ruling on an issue of law. It is the ruling of law which is in issue here. *Page 11 
 C. The Limited Record Does Not Require a Remand
Shore Line next claims that the lack of an administrative record compels this Court to require a remand. (Appellant's memorandum, page 22). While audio recordings of the proceedings have not yet been located, [4] the appellant has yet to indicate which facts are in dispute. While the Appellant vaguely references the danger of ex parte communications which could go undiscovered, the Appellant neither alleges improper communications nor is there any reason to believe that they occurred. There is no reason to presume that the DBR hearing officer, an outside attorney who is not an employee of the department communicated with departmental officials (or anyone else) about contested adjudicatory facts, or even issues of law. The Appellant has not met its burden to justify a reversal or a remand of the proceeding.
 D. There is no Showing That Insufficient Due Process WasAfforded
At the hearing, the Court indicated its concern about the lack of notice to the owner, Shore Line Properties. It is the property owners' use of its own property which was at risk at the Declaratory Ruling. Hence the notice and opportunity to defend itself is instrumental. As the United States Supreme Court summarized:
 "For more than a century the central meaning of procedural due process has been clear: `Parties whose rights are to be affected are entitled to be *Page 12 
heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard `must be granted at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (quoting Baldwin v. Hale, 1 Wall. 223, 233, 17 L.Ed. 531 (1864); Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62
(1965) (other citations omitted)). These essential constitutional promises may not be eroded. Hamdi v. Rumsfeld, 542 U.S. 507, 533, 124 S.Ct. 2633, 2648 — 2649 (U.S. 2004).
To determine the property interest which should be protected, this Court looks to another recent case:
 In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court set forth three factors that normally determine whether an individual has received the "process" that the Constitution finds "due": "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." By weighing these concerns, courts can determine whether a State has met the "fundamental requirement of due process"-"the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Id., at 333, 96 S.Ct. 893. City of Los Angeles v. David, 538 U.S. 715, 716-717, 123 S.Ct. 1895, 1896 (U.S. 2003)
If due process does apply, this Court must then determine the type of process which should be afforded:
 Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Depending on the circumstances, and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated. In other instances, however, the Court has upheld procedures affording less than a full evidentiary hearing if `some kind of a hearing' ensuring an effective "initial check against mistaken decisions" is provided before the *Page 13 
deprivation occurs, and a prompt opportunity for complete administrative and judicial review is available.
 Determining the adequacy of pre-deprivation procedures requires consideration of the Government's interest in imposing the temporary deprivation, the private interests of those affected by the deprivation, the risk of erroneous deprivations through the challenged procedures, and the probable value of additional or substitute procedural safeguards. Brock v. Roadway Express, Inc., 481 U.S. 252, 261-262, 107 S.Ct. 1740, 1747 — 1748 (U.S. Ga. 1987), quotations and citations omitted.
Shore Line was afforded an opportunity to be heard prior to the hearing officer's decision. The record was kept open for further briefing. Shore Line briefed the legal issues for the hearing officer and raised no issues of fact. Shore Line was given the opportunity to address the issues at a reasonable time and in a reasonable manner. No due process violation was demonstrated.[5]
 V. CONCLUSION
For the reasons stated, the administrative appeal is denied and the Decision of the Department of Business Regulation is affirmed.
[1] Apparently, the motion to dismiss was never heard at the department level.
[2] One requirement of such a license is found in G.L. 1956 § 31-44 7(d) which requires approval of the septic system by the Department of Environmental Management prior to licensing by DBR. This requirement appears to be of particular concern to the homeowners' association at bar.
[3] It is inappropriate, of course, to turn to the judiciary in an attempt to modify a statute. Such tasks are the province of the legislature, not the judiciary. As the high court recently stated:
 The role of the judicial branch is not to make policy, but simply to determine the legislative intent as expressed in the statutes enacted by the General Assembly. See, e.g., Little, 121 R.I. at 237, 397 A.2d at 887; State v. Patriarca, 71 R.I. 151, 154, 43 A.2d 54, 55 (1945) ("[O]ur duty * * * is solely to construe the statute * * *."); see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 188, 114 S. Ct. 1439, 128 L.Ed. 2d 119 (1994) ("Policy considerations cannot override our interpretation of the text and structure of the Act * * *."); Tennessee Valley Authority v. Hill, 437 U.S. 153, 194, 98 S. Ct. 2279, 57 L.Ed. 2d 117 (1978); United States v. Great Northern Railway Co., 343 U.S. 562, 575, 72 S. Ct. 985, 96 L.Ed. 1142 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written."); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, * * * the sole function of the courts is to enforce it according to its terms."); Civitarese v. Town of Middleborough, 412 Mass. 695, 700, 591 N.E.2d 1091, 1095 (1992) ("We will not read into the plain words of a statute a legislative intent that is not expressed by those words."). Chambers v. Ormiston, 935 A.2d 956 (R.I. 2007)
[4] The Department contends that the only missing audiotape is of a status conference. Appellee Memorandum, page 12.
[5] As Shore Line questions whether the affidavits are sworn, the Court again notes that no issues of fact were raised. Mr. Cummiskey's sworn affidavit of September 28, 2009 is consistent with the hearing officer's findings of fact. *Page 1